**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ysaac Nery SILVA–CHAVEZ, Defendant–Appellant.**

**No. 88–3694.**

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1989.

John T. Mulvehill, Federal Public Defender, John H. Craft, Asst. Federal Public Defender, New Orleans, La., for defendant-appellant.

Brian A. Jackson, John P. Volz, U.S. Atty., Robert J. Boitmann, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before KING and DUHE, Circuit Judges, BIGGERS, District Judge.[1]

DUHE, Circuit Judge.

Ysaac Silva–Chavez appeals his conviction for false use of a social security number. We affirm.

Silva–Chavez is a citizen of Peru. In November 1986 he was arrested by border patrol agents who suspected he was in the United States illegally. He presented a Louisiana driver's license issued in his name but bearing a social security number that had not been assigned to him. An investigation revealed that in applying for the driver's license he represented that he was assigned that number.

He was charged with falsely representing a number to be a social security number assigned to him by the Department of Health and Human Services, 42 U.S.C. § 408(g)(2). He moved to dismiss the indictment on the ground it did not allege a punishable offense. The district court denied the motion and Silva–Chavez agreed to plead guilty on the condition he be permitted to appeal the court's ruling.

Section 408(g)(2) provides:
Whoever—

\*     \*     \*     \*     \*     \*

  (g) for the purpose of causing an increase in any payment authorized under this subchapter (or any other program financed in whole or in part from Federal funds), or for the purpose of causing a payment under this subchapter (or any such other program) to be made when no payment is authorized thereunder, or for the purpose of ob-

---

1. District Judge of the Northern district of Mississippi, sitting by designation.

taining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, *or for the purpose of obtaining anything of value from any person, or for any other purpose—*

\* \* \* \* \* \*

(2) with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person;

(emphasis supplied). Silva–Chavez argues that Congress intended to punish the use of false social security numbers only in cases where the user seeks to obtain benefits fraudulently or where the use of the false number affects the integrity of the social security system. The phrase "for any other purpose," according to Silva–Chavez, does not include the use of a false social security number for identification outside the context of social security, and in drafting the statute Congress did not contemplate an event so unrelated to social security as a driver's license application. Silva–Chavez relies on legislative history and certain rules of construction to support this interpretation of the statute.[2]

### History

There is little doubt that subsection (g) was originally designed for the sole purpose of preventing any person from obtaining federal benefits by using a fraudulent social security number. When this subsection was added to the Social Security Act in 1972, it forbade anyone from using such a number to increase any payment or to obtain any improper payment or benefit under any federal program. Social Security Amendments of 1972, Pub.L. No. 92–603, sec. 130(a), 1972 U.S.Code Cong. & Admin. News 1548, 1586; *See* H.R.Conf.Rep. 92–

1605, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 4989, 5370, 5373 (citing prevention of improper benefit payments as the sole purpose behind the new provisions). In 1976, however, the reach of the penalty became substantially broader; the statute was amended to include not only those who sought unauthorized or excessive federal benefits, but also those who misused social security numbers "for any other purpose." Tax Reform Act of 1976, Pub.L. No. 94–455, sec. 1211, 90 Stat. 1520, 1711 (1976).

Silva–Chavez argues that despite subsequent "fine tunings" the fundamental purposes of the statute have persisted, and that in view of the legislative history Congress did not intend to punish the "use of false numbers in a non-social-security-system identification context." He points to the fact that in 1976 Congress altered the Privacy Act together with the Social Security Act, and that the amendments specifically and separately address the use of social security numbers for identification purposes. These amendments added the following paragraph to the Social Security Act:

It is the policy of the United States that any State ... may, in the administration of any tax, general public assistance, *driver's license,* or motor vehicle registration law within its jurisdiction, utilize the social security account numbers issued by the Secretary *for the purpose of establishing the identification of individuals* affected by such law, and may require any individual who is or appears to be so affected to furnish to such State ... or any agency thereof having administrative responsibility for the law involved, the social security account number ... issued to him by the Secretary.

Tax Reform Act of 1976, Pub.L. No. 94–455, sec. 1211, 90 Stat. 1520, 1711 (1976) (codified at 42 U.S.C. § 405(c)(2)(C)(i)). The

---

**2.** Silva–Chavez states at the outset that his act does not fall within the penultimate clause of subsection (g) because the State of Louisiana is not a "person" and he therefore did not "obtain[ ] anything of value from any person." Be-

cause we conclude that Silva–Chavez' conduct falls within the scope of the final clause of subsection (g), it is unnecessary to determine whether the State of Louisiana is a "person" for purposes of the statute.

House Conference Report to the 1976 Act, according to Silva–Chavez, supports the interpretation that the issue of identification received separate consideration and treatment in the Tax Reform Act. That report states:

> [The Senate amendment] makes a misdemeanor the willful, knowing, and deceitful use of a social security number *for any purpose*.
>
> *In addition,* the Senate amendment changes the Privacy Act so that a State or political subdivision may use social security numbers *for the purpose of establishing the identification of individuals* affected by any tax, general public assistance, *driver's license,* and motor vehicle registration laws.

H.R.Conf.Rep. 94–1515, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News 2897, 4118, 4194–95. Silva–Chavez emphasizes the words "In addition," arguing that misidentification is treated in the legislation as conduct that stands "in addition" to—and therefore separate from—conduct contemplated by the words "for any other purpose."

Silva–Chavez also relies on a 1981 amendment to § 408(g) in which Congress added a clause punishing misrepresentation of a social security number "for the purpose of obtaining anything of value from any person...." Omnibus Reconciliation Act, Pub.L. No. 97–123, sec. 4, 95 Stat. 1659, 1663–64 (1981). In summing up the prior law the House Conference Report states:

> Criminal penalties are provided for: (1) knowingly and willfully using a social security number that was obtained with false information, (2) *using someone else's social security number,* or (3) unlawfully disclosing or compelling the disclosure of someone else's social security number.

H.R.Conf.Rep. 97–409, 97th Cong., 1st Sess., *reprinted in* 1981 U.S.Code Cong. & Admin.News 2681, 2687. The 1981 amendment, according to Silva–Chavez, shows an intention to punish fraudulent conduct undertaken only for monetary gain, and nothing in the excerpt from the report suggests that Congress intended to punish a person who "merely generated random numbers to fill in the void on his otherwise truthful [driver's license] application."

We believe, on the basis of the legislative history, that the words "for any other purpose" cannot be interpreted to exclude the furnishing of a false social security number in an application for a driver's license. First, the 1981 amendment clearly shows that the statute is not limited to the social security context, and the 1981 report states outright that the prior law provided a penalty for using the social security number of another. Second, the 1976 amendments, if they aid interpretation at all, imply that since the States are permitted to use social security numbers on driver's licenses, the United States should accordingly be empowered to punish those who provide false numbers to licensing agencies. Third, Silva–Chavez has failed to cite a crucial portion of the legislative history—the 1976 report of the Senate Finance Committee explaining the addition of the words "for any other purpose":

> While the Social Security Act currently provides criminal penalties for the wrongful use of a social security number for the purpose of obtaining or increasing certain benefit payments, including social security benefits, there is no provision in the Code or in the Social Security Act relating to the use of a social security number for purposes unrelated to benefit payments. *The committee believes that social security numbers should not be wrongfully used for any purpose.*

S.Rep. No. 94–938, 94th Cong., 2d Sess., pt. 1, at 391, *reprinted in* 1976 U.S.Code Cong. & Admin.News 3439, 3820. Congress has therefore explained that the words "for any other purpose" mean precisely what they say.

### *Construction*

Under § 408(g) false representation of a social security number is proscribed when it is committed either for any of four specific purposes or generally "for any other purpose." Silva–Chavez argues that since the four specific purposes relate to mone-

tary gain, under the rule of *ejusdem generis* the fifth clause should be interpreted in a similar manner and thus limited to "other, similar, species of fraud with the motivation of achieving some payment, gain, or pecuniary value." Application of the statute in the present case, according to Silva–Chavez, is therefore anomalous and inappropriate.

The rule of *ejusdem generis* states that "where general words follow an enumeration of specific items, the general words are read as applying only to other items akin to those specifically enumerated." *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588, 100 S.Ct. 1889, 1895, 64 L.Ed.2d 525 (1980). The rule may not be used to defeat the obvious purpose of legislation. *Gooch v. United States*, 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522 (1936). In *Gooch* a kidnaping statute which forbade the holding of a victim "for ransom or reward" was amended to read "for ransom or reward *or otherwise.*" Both the House and Senate Judiciary Committees stated that the statute was amended to extend jurisdiction to persons held not only for reward, but to those held "for any other reason." The Supreme Court concluded that Congress apparently intended to prevent a captor from securing some benefit to himself, and that *ejusdem generis* could not be used to narrow the scope of the statute and defeat this purpose. *Id.; see also United States v. Powell*, 423 U.S. 87, 90, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975) ("[W]e would be justified in narrowing the statute [by application of *ejusdem generis*] only if such a narrow reading was supported by evidence of congressional intent over and above the language of the statute.").

In amending § 408(g) in 1976 Congress stated unambiguously that it believed social security numbers should not be misused for any purpose. Application of *ejusdem generis* to exclude Silva–Chavez' conduct would defeat the obvious purpose of the 1976 legislation. As Congress has shown its unconcern for the reasons behind the misuse of a social security number, there is nothing anomalous about the application of the statute in the present case.

The judgment is AFFIRMED.