RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0431p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FERENC CSEKINEK,

                             *Petitioner,*

        *v.*

IMMIGRATION AND NATURALIZATION SERVICE,

                             *Respondent.*

No. 02-3481

> On Appeal from the Board of Immigration Appeals.
> No. A70 824 315.

Submitted: October 31, 2003

Decided and Filed: December 15, 2004

Before: BATCHELDER and COLE, Circuit Judges; HOOD, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Michael Varga-Sinka, Lakewood, Ohio, for Petitioner. Jeffrey J. Bernstein, Richard M. Evans, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

      BATCHELDER, J., delivered the opinion of the court, in which HOOD, D. J., joined. COLE, J. (pp. 7-13), delivered a separate dissenting opinion.

---

## OPINION

---

      ALICE M. BATCHELDER, Circuit Judge. Petitioner, Ferenc Csekinek, appeals the decision of the Board of Immigration Appeals ("BIA") affirming the finding of the Immigration Judge ("IJ") that Csekinek is removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(I) based on his March 1997 domestic violence conviction. He also appeals the IJ's decision denying as untimely his application for asylum and denying him withholding of deportation. Csekinek claims that the IJ impermissibly used the date of his sentencing hearing as the date of his domestic violence "conviction," as that term is used in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Csekinek argues that an earlier date on which he allegedly pled guilty to the domestic violence charge should have been used as the date of his conviction, and that because that guilty plea was entered before the effective date of the IIRIRA, it cannot be the basis for his being found to be removable. Csekinek also asks this Court to hold that civil deportation proceedings are, in essence, criminal proceedings which can violate the Ex Post Facto Clause contained in

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Article I of the United States Constitution, or, alternatively, that to apply IIRIRA to him would violate due process. Finally, Csekinek claims that he has demonstrated extraordinary circumstances justifying the untimeliness of his application for asylum, and that his application should not have been rejected on that ground. Because Csekinek's claims are either without merit or are unreviewable, we AFFIRM the judgment of the IJ and the BIA.

## I.

Csekinek entered the United States on a B-2 visitor visa. He married a United States citizen in January 1995, and his immigration status was adjusted to that of permanent resident. Csekinek was thereafter twice convicted of domestic violence in the State of Ohio. Following the second conviction, the Immigration and Naturalization Service[1] ("the Service") instituted removal proceedings and served Csekinek with a Notice to Appear. The IJ conducted the first in-person hearing on the merits of the charge of removability on November 19, 1998. After reviewing the only evidence presented with regard to the domestic violence convictions, the IJ concluded that the Service had proven both convictions by clear and convincing evidence. The IJ stated, however, and the Service conceded, that the earlier of the two convictions was not material to the proceedings because it predated IIRIRA.

The IJ found, and Csekinek's counsel conceded, that the date of the second conviction was March 21, 1997, the date on which judgment was pronounced and Csekinek was sentenced. That date was well after the effective date of IIRIRA. The IJ found Csekinek removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(I) on the basis of the second conviction. However, the IJ continued the proceedings in order to permit Csekinek to file an application for asylum, noting that although Csekinek had failed to apply for asylum within one year of his last arrival in the United States or by April 1, 1998, whichever was later, Csekinek's circumstances were sufficiently unusual that he might be able to demonstrate justification for the untimeliness of the application.

Csekinek filed an application for asylum and for withholding of removal, and after several additional continuances, the IJ held another hearing on those matters. At the conclusion of that hearing, the IJ ruled that the Service had proven by clear and convincing evidence that Csekinek was removable under 8 U.S.C. § 1227(a)(2)(E)(I) on the basis of his domestic violence conviction dated March 21, 1997; that Csekinek had not demonstrated cause for his failure to file an application for asylum within the statutory period; that his application for asylum was untimely and that Csekinek was therefore not eligible for asylum; and that Csekinek had not established any basis to support his application for withholding of removal. The IJ therefore ordered Csekinek removed to Hungary and denied the applications for asylum and withholding of removal. The BIA summarily affirmed the IJ's decision and Csekinek timely appealed to this court.

## II.

Because the BIA affirmed the decision of the IJ without opinion, the IJ's decision is the final agency determination. 8 C.F.R. § 3.1(a)(7) (2000). Accordingly, it is the IJ's decision that we review in this appeal. We review the IJ's factual determinations under the substantial evidence standard, which requires that we affirm those determinations unless the evidence "'not only supports a contrary conclusion, but indeed compels it.'" *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999) (quoting *Adhiyappa v. INS*, 58 F.3d 261, 265 (6th Cir. 1995)). We review all questions of law de novo. *Id.*

Csekinek assigns as error the IJ's determination that his second domestic violence conviction occurred on March 21, 1997, after the effective date of IIRIRA. He correctly notes that IIRIRA defines a conviction as a "formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo

---

[1] The Homeland Security Act of 2002 abolished the INS and transferred its functions to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).

contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A). Although he has provided no evidence to support his claim, Csekinek maintains that March 6, 1996, was the date of his conviction because on that date he pled guilty and the judge ordered him to report to probation and imposed a $2,500 personal bond upon him.

Before reaching the question of which date is proper for conviction purposes, we must determine whether Csekinek exhausted his administrative remedies as to this issue. Exhaustion of administrative remedies requires the petitioner to first argue the claim before the IJ or the BIA before an appeal may be taken. 8 U.S.C. § 1252(d)(1); *Juarez v. INS*, 732 F.2d 58, 59 (6th Cir. 1984). The petitioner's failure to do so strips this Court of jurisdiction to review the BIA's decision. 8 U.S.C. § 1252(d)(1); *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994). The INS contends that Csekinek never argued before the IJ that his second conviction predated the effective date of IIRIRA, and this court therefore lacks jurisdiction to review this claim. Csekinek maintains that he either raised the error under an umbrella assignment of errors or that he preserved the issue by arguing it in a "slightly different manner," citing *Cruz-Navarro v. INS*, 232 F.3d 1024, 1030 n.8 (9th Cir. 2000).

It is clear that Csekinek did not raise this assignment of error before the BIA. The regulations in effect at the time that Csekinek pursued his appeal to the BIA required that his Notice of Appeal explicitly identify the grounds for his appeal.

> (b) *Statement of the basis of appeal.*
> The party taking the appeal must identify the reasons for the appeal in the Notice of Appeal (Form EOIR-26 or Form EOIR-29) or in any attachments thereto, in order to avoid summary dismissal pursuant to § 3.1(d)(1-a)(I). The statement must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged. If a question of law is presented, supporting authority must be cited. If the dispute is over the findings of fact, the specific facts contested must be identified.

8 C.F.R. § 3.3(b) (2000).

In his Notice of Appeal to the BIA, Csekinek stated ten grounds for appeal. Except for the umbrella assignment of error, each ground was specific and particularized, and made no mention of any claim that his conviction predated the effective date of IIRIRA. The umbrella assignment of error states, "Other errors of law and facts were made which will be fully cited and briefed upon receipt of the transcripts of the hearing." This general statement contains nothing that is required by Section 3.3(b), and is wholly inadequate to raise any claim before the BIA. Viewed in the most charitable light, his "umbrella" assignment of error is a general objection to the decision of the IJ. The regulations contain no provision authorizing the use of a general objection to preserve any issue for review.

Csekinek alternatively contends that he argued this issue "in a slightly different manner" in front of the IJ and has therefore preserved this issue on appeal. *See Cruz-Navarro*, 232 F.3d at 1030 n.8. Failing to argue an issue at all before the IJ is not the equivalent of arguing the issue in a slightly different manner. And Csekinek not only failed to argue the issue at all, he conceded the point. Upon being told the effective date of the IIRIRA, Csekinek's counsel responded,

> Q. The reason I ask is because in fact the 1997 March date refers to his sentencing but he–
> A. Which is unfortunately the date when the conviction was final.
> Q. Considered final, okay.

This exchange clearly indicates that Csekinek acknowledged and conceded that, for purposes of this removal hearing, the date of his conviction was the date of his sentencing hearing. We hold that Csekinek failed to exhaust his administrative remedies with regard to this assignment of error, and that we therefore lack jurisdiction to consider it.

Even if we could find that Csekinek exhausted his administrative remedies, we would also hold that the IJ did not err in using the March 1997 sentencing hearing as the date of his conviction. In order to conclude to the contrary, we would have to ignore the mandate of 8 U.S.C. § 1252(b)(4)(A) that "the court of appeals shall decide the petition [for review of an order of removal] on the administrative record on which the order of removal is based." There are no court documents in the record either identifying the date on which Csekinek pled guilty to this offense, or corroborating his contentions that he pled guilty on March 6, 1996; that he was ordered to report to probation; or that a $2,500 personal bond was imposed on that date. Even Csekinek's own unsworn statement (apparently submitted as part of his application for asylum) does not support these claims, but says that Csekinek was charged with domestic violence in 1996, that he fled the jurisdiction prior to being sentenced, and that "in 1997 I pled guilty to an amended charge. . ."

## III.

Csekinek next argues that the application of the IIRIRA in these deportation proceedings violates the Ex Post Facto Clause and denies him due process. The Service does not challenge Csekinek's ability to raise these constitutional claims for the first time before this court. We need not, and therefore do not, address this question because Csekinek provides no basis for either claim.

Csekinek argues that immigration proceedings are criminal rather than civil proceedings, and that they can therefore violate the Ex Post Facto Clause. According to Csekinek's brief on appeal, "[t]he deportation of 'criminal' aliens is intrinsically inseparable from the criminal conduct for which the alien is being deported . . . [and] courts cannot continue to ignore factors favoring the designation of judicial deportations as criminal proceedings." Interwoven in Csekinek's ex post facto claim is his contention that application of the IIRIRA in this case violates due process requirements, because deportation was not a consequence of Csekinek's criminal acts at the time that he pled guilty to them. "[N]oncitizens legitimately rely on their knowledge of deportation consequences for their crimes when they enter a guilty plea," his brief contends, and "[a] permanent resident has a reasonable expectation to know the severity of the consequences flowing from his conviction at the time his guilty plea or nolo contendere is entered."

Each of Csekinek's claims is baseless. The Supreme Court has specifically held that immigration and deportation proceedings are civil, and not criminal, in nature. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country . . . ."). The Supreme Court has thus definitively stated that the Ex Post Facto Clause does not apply to such proceedings. *See Galvan v. Press*, 347 U.S. 522, 531 (1954) ([I]t has been the unbroken rule of this Court that [the Ex Post Facto Clause] has no application to deportation . . . ."). Csekinek's brief recognizes this, and suggests that we "look at the accepted legal fiction" of deportation as a civil procedure "and treat it for what it truly is . . . a penalty . . . intertwined with violations of criminal statutes and criminal procedures." The failure to accept this position, his brief complains, results from—among other things— "the lazy reliance of courts on precedent." In fact, of course, we are bound by Supreme Court precedent on this issue. "[A] precedent of [the Supreme] Court *must* be followed by the lower federal courts . . . ." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (emphasis added). Nothing in this case presents an ex post facto problem.

Csekinek's due process claim, to the extent that it differs at all from his ex post facto claim, relies entirely on his assertion that deportation was not a consequence of his criminal acts at the time that he pled guilty to them. This is, in essence, merely another attempt to raise the claim that he pled guilty to the second charge of domestic violence prior to the enactment of the IIRIRA. But as we have held hereinabove,

Csekinek cannot argue that factual issue before this Court because he failed to exhaust his administrative remedies. *See* 8 U.S.C. § 1252(d)(1).

Csekinek further contends that his due process rights were violated even if his second conviction occurred in March 1997, and not, as he posits, in March 1996. "No one informed him during his sentencing on March 27, 1997, that the immigration law had been changed . . . and he had become . . . deportable . . . . Petitioner pled guilty before the enactment of IIRAIRA." This contention is equally without foundation. Section 1227(a)(2)(E)(I) was enacted on September 30, 1996. The adjudication occurring in March 1997 obviously occurred after that date. Csekinek failed to raise before the BIA either his claim that he pled guilty before September 30, 1996, or his claim that he was not aware of the changes in immigration law; these factual allegations are the sine qua non of his due process claim, and, for the reasons set forth above, we cannot entertain them on appeal.

## IV.

Csekinek also asserts that the IJ erred in denying his application for asylum. That issue is unreviewable by this court. 8 U.S.C. § 1158(a)(3) clearly bars judicial review of the agency's determination regarding an application's timeliness. *Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003). Consequently, we cannot and do not review the BIA's determination that Csekinek's application for asylum was untimely.

Finally, Csekinek has failed to meet his burden of showing that he is entitled to a withholding of deportation. He was required to show a clear probability that if he is returned to Hungary he will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *INS v. Stevic*, 467 U.S. 407, 430 (1984); *Castellano-Chacon*, 341 F.3d at 545. The IJ found that Csekinek's claims of future persecution are unsubstantiated, and his past claims of "persecution" related merely to punishment for failing to obey orders from a superior officer when he was in the military. The IJ's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ali v. Reno* 237 F.3d 591, 596 (6th Cir. 2001) (quoting 8 U.S.C. § 1252(b)(4)(B) and (C)).

The evidence is not such that a reasonable adjudicator would be compelled to find in Csekinek's favor. Csekinek presented only his own testimony in support of his application. With regard to Csekinek's credibility, the IJ noted two material inconsistencies in Csekinek's version of events. First, Csekinek testified that he left Hungary because he believed that the Communist party was returning to power. This testimony contradicted his own asylum application, which stated that Csekinek left the country because he believed that Serbians were infiltrating Hungary and looking for individuals who had delivered supplies to ethnic Hungarians in Croatia. The IJ was correct in noting that this is a "fairly significant inconsistency." Second, the IJ noted that Csekinek had failed to present any evidence of his alleged military background, and in fact never explained his reasons for allegedly destroying the evidence that would support his claims.

Although the IJ did not expressly determine that Csekinek is not credible, Csekinek's application for withholding of removal necessarily relied on his testimony. Where that testimony is unreliable, his claim must fail for lack of proof. Even if we take Csekinek's testimony in its best light, he has not established that he would probably be persecuted if he is returned to Hungary. The IJ made several determinations in denying Csekinek's application. First, the IJ noted that despite its prior status as a Communist country, Hungary is now a parliamentary democracy with an active and independent judiciary which "seeks to adhere to [its] constitution." The IJ further found that Csekinek's alleged past punishment at the hands of the Hungarian military, if it occurred, was lawful discipline that resulted from Csekinek's failure to obey orders or act within the military's accepted mores and standards. The IJ also noted that Csekinek did not leave Hungary until 1993, when he feared he might be prosecuted for "gun running," an activity which is itself in violation of the law, and for which lawful sanctions do not constitute persecution. The evidence here is not such that it would require a court to come to a conclusion different from that

reached by the IJ. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992) (stating that substantial evidence is lacking only in those cases where the petitioner establishes that the evidence of the record was "so compelling that no reasonable fact finder could fail to find" in his favor).

For the foregoing reasons, we AFFIRM the judgments of the IJ and the BIA.

_____

**DISSENT**

_____

R. GUY COLE, JR., Circuit Judge.  I concur with the majority regarding Csekinek's due process and asylum claims.  However, since I disagree regarding the issues of exhaustion and applicability of IIRIRA due to the dates of Csekinek's convictions, I respectfully dissent.

**I.**

The following facts place my discussion in context. Csekinek, a native and citizen of Hungary, entered the United States on July 29, 1993 as a non-immigrant visitor.  He obtained the status of a lawful permanent resident on August 31, 1995.

Two criminal offenses triggered the deportation proceedings. On November 8, 1995, Csekinek had pleaded guilty and was sentenced in the Parma Municipal Court in Parma, Ohio for committing a domestic violence offense against his wife, in violation of Section 637.17(a)(3) of the Parma Municipal Code. On March 6, 1996, Csekinek had pleaded guilty to a second domestic violence charge for violating Ohio Revised Code § 2919.25.  On March 21, 1997 he was sentenced to one year in prison for that charge, although on that same date, the sentence was suspended and Csekinek was ordered to serve one year of probation and to pay court costs and a $100 probation supervision fee.

On June 3, 1997, the Immigration and Naturalization Service ("INS") served on Csekinek a Notice to Appear, charging that he was subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(E)(i), which renders deportable any alien convicted of a domestic violence offense after entry into the United States.  In the notice, the INS cites both of the domestic violence charges as support for removal, noting that Csekinek had been "convicted" of the first offense on November 8, 1995 and the second on March 21, 1997.

Hearings before Immigration Judge Elizabeth A. Hacker ("IJ") were held on dates between March 1998 and August 2000.  In the hearings, Csekinek initially denied that he was twice convicted of domestic violence offenses.  The INS, however, submitted the following evidence:

(1)     A Parma Municipal Court record indicating that on November 8, 1995, Csekinek had pleaded guilty to a domestic violence charge and, on that same date, he was given a three day suspended jail sentences, ordered to be on probation for 24 months, and ordered to pay a $300 fine and $200 in court costs.

(2)     A Cuyahoga County Court of Common Pleas "Journal Entry" dated March 26, 1997, memorializing the proceedings of March 21, 1997 where Csekinek was sentenced on a second domestic violence charge to which he had entered a plea of guilty on a previous date

(which the journal entry does not specify).[1]  In addition, the journal entry indicates that on March 21, 1997 the court formally pronounced judgment against Csekinek for this charge.

The IJ issued her decision in an "Oral Decision and Order" dated August 28, 2000.  First, the IJ concluded that Csekinek was removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i), citing both domestic violence convictions as a basis for removal.

Csekinek filed a timely Notice of Appeal to the BIA.  However, his counsel failed to file a timely brief in support of that appeal, and on December 10, 2001, the BIA denied Csekinek's request to file a late brief.

Nevertheless, despite the lack of an accompanying brief, the BIA considered Csekinek's case on the merits and, in an order dated April 3, 2002, "affirm[ed], without opinion, the results of the decision [of the immigration judge]."  As the BIA noted, the IJ's decision became the final agency determination.

On appeal, Csekinek no longer denies that he was twice convicted for domestic violence offenses. Instead, he argues that (1) the IJ failed to consider the definition of "conviction" set forth in the INA; (2) pursuant to the statutory definition, both of his convictions pre-date IIRIRA; and therefore (3) the IJ erroneously relied on these convictions to find him eligible for deportation pursuant to 8 U.S.C. § 1227(a)(2)(E)(i).

## II.

In his first claim, Csekinek contends that he is not removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) because both of his conditions for domestic abuse occurred before the enactment of IIRIRA.  However, 8 U.S.C. § 1252(d)(1) provides that a court may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right."  The INS asserts that Csekinek failed to exhaust his available administrative remedies.  I disagree.

First, this claim was raised and partially vetted at the November 19, 1998 hearing before the IJ. There, Csekinek's counsel advised the IJ of his claim that Csekinek's second conviction took place before the enactment of IIRIRA.  Csekinek's counsel and the IJ engaged in an exchange about the date IIRIRA was enacted.  The discussion was interrupted and never brought up again.  But, as the hearing turned towards other matters, Csekinek's counsel specifically indicated that he "would like to reserve the right to appeal" the IJ's finding that March 1997 was the date of Csekinek's second "conviction" within the meaning of the INA.

---

[1] The date on which Csekinek had pleaded guilty to the second domestic violence charge appears never to have been presented to or adduced by the IJ or the BIA.  As I discuss later, this date is critical because if Csekinek's March 1996 plea constitutes the date of his "conviction" – as defined by the INA, 8 U.S.C. § 1101(a)(48)(A) – then Csekinek is ineligible for removal pursuant to 8 U.S.C. § 1227(a)(2)(E)(i), which only applies to convictions occurring after September 30, 1996, the enactment date of IIRIRA.

On appeal, Csekinek asks this Court to take judicial notice of a Cuyahoga County, Ohio Court of Common Pleas record titled, "Appearance and Execution Criminal Docket," which establishes that Csekinek had pleaded guilty on March 6, 1996 to the second domestic violence charge and was, on that same date, ordered to probation and encumbered with a $2,500 personal bond.  The document also indicates that Csekinek was sentenced for this charge on March 21, 1997.

I would not take judicial notice of this document.  Title 8 U.S.C. § 1252(b)(4)(A) makes clear that "the court of appeal shall decide the petition only on the administrative record on which the order of removal is based."  *See also Visha v. I.N.S.,* 51 Fed. Appx. 547, 551 (6th Cir. 2002)(stating that in immigration cases, the court of appeals is "prohibit[ed] . . . from taking judicial notice of facts outside the administrative record.")

Nevertheless, it is essential to note that the IJ was fully aware of the fact that Csekinek had pleaded guilty to the second domestic violence charge prior to his March 1997 sentencing.  The Journal Entry submitted to the IJ by the INS clearly indicates that a plea took place at an earlier time, even though the exact date is not specified.

The Government characterizes the exchange as having involved a concession by Csekinek's counsel to the IJ's comment that "the March 1997 date refers to . . . the date when the conviction was final." However, the transcript gives no indication that Csekinek's counsel conceded this point. To the contrary, Csekinek's counsel attempted to respond when the Government's attorney interjected, directing the IJ's attention to other matters. Furthermore, upon recognition that the IJ and the Government were moving on to other issues, Csekinek's counsel explicitly announced his desire to appeal the issue.

In short, Csekinek's counsel raised this issue before the IJ in a form sufficiently related to the claim he now brings forth on appeal and also indicated his intention to pursue the matter on appeal to the BIA.

Second, Csekinek filed a timely Notice of Appeal to the BIA, challenging the IJ's decision concerning a broad array of issues. Amongst other issues not specifically related to this claim, the Notice of Appeal included an "umbrella" provision whereby Csekinek sought to reserve his right to challenge "[o]ther errors of law and facts. . . which will be fully cited and briefed upon receipt of the transcript of the hearing." Csekinek's counsel failed, however, to file a timely brief and his formal request that the BIA accept a late brief was denied on December 10, 2001. Although one could maintain that this "umbrella" ground for appeal was too generalized to render the claim concerning Csekinek's convictions properly raised, since this issue was raised before the IJ and Csekinek's counsel explicitly indicated his intention to the IJ to appeal the issue, it is reasonable to read this claim into the "umbrella" provision.

Indeed, the BIA considered the merits of Csekinek's appeal despite the lack of an accompanying brief, and the BIA affirmed, "without opinion, the results of the decision below." By affirming the IJ's opinion in its entirety, we should presume that the BIA considered the merits of Csekinek's challenge to his eligibility for removal. That is, after all, the most consequential issue in these proceedings and an issue fairly inferred from the Notice of Appeal and specifically designated by counsel as an appeal issue before the IJ. *See Sagermark v. I.N.S.,* 767 F.2d 645, 648 (9th Cir. 1985) ("Whether or not the decision on the merits was technically before the BIA, the BIA addressed it thoroughly enough to convince us that the relevant policy concerns underlying the exhaustion requirement--that an administrative agency should have a full opportunity to resolve a controversy or correct its own errors before judicial intervention--have been satisfied here.").

Finally, it is worthwhile to note that some courts decline to reach the exhaustion question entirely when they feel that it is important to do so and, particularly, where they determine that the decision of the court below was erroneous. *See Drax v. Reno,* 338 F.3d 98, 110 n.17 (2d Cir. 2003). In this case the IJ's conclusion with respect to the date of Csekinek's second "conviction" was clearly erroneous and this error proceeds to decide Csekinek's fate.

Accordingly, I believe Csekinek satisfied the exhaustion requirements.

### III.

We review *de novo* the agency's construction of a statute that it administers, though subject to established principles of deference. *See I.N.S. v. Aguirre-Aguirre,* 526 U.S. 415, 424-25 (1999); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843-44 (1984). Under those principles, if the intent of Congress is clear with respect to the immigration laws, it must govern, but where the statute is silent or ambiguous on an issue, the question for the court is whether the agency's interpretation is based on a permissible construction of the statute. *Id.* However, where a reviewing court cannot sustain an agency decision because the agency has failed to offer a legally sufficient basis for that decision or failed to consider a legal issue central to the agency determination, the appropriate remedy is remand to the agency for further consideration. *See I.N.S. v. Ventura,* 537 U.S. 12, 16-17 (2002) (where BIA failed to consider a legal issue concerning an alien's asylum application, "the proper remedy, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Griffiths v. I.N.S.,* 243 F.3d 45, 55 (1st Cir. 2001) ("Where a reviewing court cannot sustain an agency decision because

it has failed to offer a legally sufficient basis for that decision, the appropriate remedy is remand to the agency for further consideration.").

With respect to the agency's factual conclusions, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

In her Oral Decision and Order, the IJ used both of Csekinek's domestic violence convictions to sustain his removability. In setting forth the justification for Csekinek's removability, the IJ stated:

> The Immigration and Naturalization Service has submitted two documents, the first being a record from the Parma municipal court consisting of an arraignment sheet, a copy of the judgment, as well as a copy of the complaint in case number 95CRB8971-1. It reflects that the defendant's name was Ferenc Csekinek and the conviction occurred as set forth in the Notice to Appear (*see* Exhibit 1). It appears from this that the respondent entered a plea of guilty to the charge and that he was sentenced to a fine of $300 plus costs of $200 and three days in jail, three of which were suspended and placed on a probation of 24 months of which six months was a reporting probation period. *See* Exhibit 3.
> The [INS] has also submitted a [municipal court's] journal entry also in the name of Ferenc Csekinek in which respondent entered a plea of guilty to domestic violence under Ohio revised code 2919.25 in case number 333069, as reflected in an amended indictment .... **It would appear from both the complaint in the Parma case as well as in the amended complaint and the subsequent judgements [sic] that the respondent has indeed been convicted of the offences [sic] set forth in allegations numbered five and six contained on the Notice to Appear. I therefore find that these allegations are sustained by the requisite standards of clear and convincing evidence.**
> The Court would find that the charge of removability under Section 237(a)(2)(E)(i) [8 U.S.C. § 1227(a)(2)(E)(i)] of the Act is sustained by the requisite standards of clear and convincing evidence. (emphasis added)

However, deportation pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) only applies to convictions occurring on or after the date of IIRIRA's enactment – September 30, 1996. Csekinek claims that both of his convictions took place before September 30, 1996: he contends that his first conviction occurred on November 8, 1995 and that his second conviction occurred on March 6, 1996, the day he pled guilty to the second domestic violence charge. He contends that the IJ failed to consider the definition of "conviction" set forth in the INA, 8 U.S.C. § 1101(a)(48)(A).

Because the INA sets forth a definition of "conviction" uniquely applicable to immigration proceedings, the dates on which Csekinek's "convictions" occurred is a legal question that we must review *de novo*.

Title 8 U.S.C. § 1101(a)(48)(A) provides that:

The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court, or if adjudication of guilt has been withheld, where —

> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

In her opinion and in the various hearings before her, the IJ never analyzes Csekinek's domestic violence offenses in light of the INA's definition of "conviction." Indeed, as the IJ finds deportation supportable based on both convictions, she apparently ignores the statutory definition. This is despite clear

evidence in the administrative record that Csekinek's first conviction occurred on November 8, 1995, nearly one year before the enactment of IIRIRA.

Accordingly, the IJ committed clear legal error in determining that Csekinek's first conviction constitutes a basis for removability pursuant to 8 U.S.C. § 1227(a)(2)(E)(i).

The IJ's disregard of the statutory definition of "conviction" is further evident in the transcript from the November 19, 1998 hearing in which the IJ and Csekinek's counsel engaged in a brief colloquy about the date of Csekinek's second conviction:

Csekinek's Counsel: Your Honor . . . do you have the exact date in 1996 [that Section 350 of the INA was enacted]?

IJ: September 30th of 1996 was the effective date of [IIRIRA] . . . .

Csekinek's Counsel: The reason I ask is because in fact the 1997 March date refers to his sentencing but he --

IJ: Which is unfortunately the date when the conviction was **final.**  (emphasis added)

However, the INA's definition of "conviction" makes no mention of a finality requirement.  Indeed, case law indicates that one of Congress' primary goals in creating this new definition of "conviction" was to dispense with a finality requirement.  *See Moosa v. I.N.S.,* 171 F.3d 994, 1008 (5th Cir.1999) ("[t]here is no indication that the finality requirement" that existed prior to 1996 "survives the new definition of 'conviction' found in IIRIRA . . . .  Not only did Congress omit such a requirement from its definition of 'conviction,' but the legislative history demonstrates that Congress *deliberately* eliminated the third prong of the [previous] *Ozkok* test (which appears to incorporate a finality concept).") (emphasis in original).  The legislative history of IIRIRA confirms this.  *See* H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess.1996, 1996 WL 563320 at *497 ("This new provision . . . clarifies Congressional intent that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws.").  Therefore, the IJ also committed clear legal error in determining that the second conviction supports deportation.

It should be noted here that Csekinek's "conviction" for the second offense took place on March 6, 1996 – the day on which he pled guilty to the second domestic violence charge – as opposed to March 27, 1997, the date of his sentencing.  However, I do not apply the definition on its own, particularly since direct evidence that Csekinek pled guilty on March 6, 1996 is not in the administrative record.  Because this issue goes directly to petitioner's eligibility for deportation, this is a matter the INA places primarily in agency hands and a "court of appeals 'is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.'"  *Ventura,* 537 U.S. at 16 (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)).  Still, the Supreme Court has made clear – in discussing one of the exceptions to the rule that judicial review is limited to the administrative record – that "[i]f . . . there was such a failure to explain administrative action as to frustrate effective judicial review, the remedy [is] not to hold a de novo hearing but . . . to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary."  *Camp v. Pitts,* 411 U.S. 138, 142-43 (1973).  Where – as here – an agency has failed to offer a legally sufficient basis for its decision, the case should be remanded to the agency for additional investigation or explanation.  *See Ventura,* 537 U.S. at 16-17.

In this case, the IJ failed to offer a legally sufficient basis for her conclusion that Csekinek's second "conviction" took place on March 27, 1997 and that this constituted a valid basis for deportation.  As noted above, the IJ failed to discuss the uniquely applicable definition of "conviction" set forth in the INA, 8 U.S.C. § 1101(a)(48)(A).

Although the IJ may not have had evidence of the exact date of the guilty plea, the IJ was clearly aware that Csekinek had earlier pleaded guilty to the charge for which he was sentenced on March 27, 1997. To be clear, the INA explains that a "conviction" takes place "where adjudication of guilt has been withheld" and where "the alien has entered a plea of guilty" and "the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." *Id.* Accordingly, the IJ was required to determine the date of the statutorily defined term "conviction," in order to properly determine whether Csekinek was legally eligible for deportation. Because the IJ failed to engage in that analysis, the legal determination that Csekinek is eligible for deportation is unsubstantiated and the IJ's decision should be vacated and remanded for further proceedings consistent with this opinion.

**IV.**

For the purposes of completeness, I will address arguments raised by the Government absolving the IJ of her duty to determine the date of the second conviction and the applicability of IIRIRA.

Csekinek argues that he was "convicted" on March 6, 1996 when he pled guilty to a domestic violence charge in the Court of Common Pleas, Cuyahoga County. At that hearing, he was also ordered to report to probation and had a $2,500 personal bond imposed upon him. As such, Csekinek argues, he had "entered a plea of guilty" and "the judge . . . ordered some form of punishment, penalty, or restraint" on his liberty, thereby satisfying the INA's definition of "conviction" as set forth in 8 U.S.C. § 1101(a)(48)(A).

By contrast, the Government contends that Csekinek falls into the first component of the definition of "conviction," i.e. "a formal judgment of guilty . . . entered by a court. . . ." 8 U.S.C. § 1101(a)(48)(A)(i). While proof of the guilty plea is lacking in the administrative record, and I may not take judicial notice of such fact, the IJ was nevertheless aware that Csekinek had pleaded guilty at some earlier date. Accordingly this argument is without merit.

The Government next argues that Csekinek is not covered by the "adjudication of guilt withheld" component of the statutory definition of "conviction" because (1) Csekinek "evaded sentencing by fleeing the jurisdiction" and (2) the formal adjudication of guilt was not withheld for purposes of "ameliorating the effects" of a conviction. But neither the statute nor case law suggests that Csekinek's fleeing the jurisdiction is a relevant factor in determining the date of his conviction. *See* 8 U.S.C. § 1101(a)(48)(A) (providing no limitation on the reasons why "adjudication of guilt has been withheld"). A "plain language reading" of the statute, *Moosa,* 171 F.3d at 1006, therefore makes room for the common practice of deferring a formal pronouncement of guilt until the sentencing phase.

The Government next argues that the March 21, 1997 proceeding, documented in the March 27 journal entry, constituted Csekinek's "conviction" because it entailed a formal and final adjudication of guilt. For support, the Government cites to the Court of Common Pleas journal entry, which states in relevant part:

> The defendant herein having, on a former day of court entered a plea of guilty to domestic violence . . . was this day in open court with his/her counsel present . . . .
> Thereupon the court inquired of the said defendant if he/she had anything to say why judgment should not be pronounced against him/her; and having nothing but what he/she had already said and showing no good and sufficient cause why judgment should not be pronounced.
> It is therefore, ordered and adjudged by the court that said defendant, Ferenc G. Csekinek, is sentenced to Lorain Correctional Institution for a Term of 1 year; pay court costs.
> Sentence suspended; defendant to serve 1 year probation; pay court costs and $100.00 probation supervision fee.

However, respondent's finality argument is misplaced, since both courts and Congress have explained that the INA's definition of "conviction" omits any requirement of finality.

The Government's suggestion that petitioner was not "convicted" within the meaning of the INA because his conviction may not have been final in the eyes of the state is also without merit. Courts have determined that "[t]he immigration laws contain no . . . indication that they are to be interpreted in accordance with state law." *United States v. Campbell,* 167 F.3d 94, 97 (2d Cir. 1999); *Moosa,* 171 F.3d at 1006.

Csekinek's construction – which urges us to plainly read the definition of "conviction" as set forth in the INA, 8 U.S.C. § 1101(a)(48)(A), is the stronger argument. Indeed, the proceeding on March 26, 1996 – at which Csekinek "entered a plea of guilty" and where "the judge . . . ordered some form of punishment, penalty or restraint" in the form of an order of probation and a personal bond – falls squarely within a plain language reading of the INA's definition of "conviction" 8 U.S.C. § 1101(a)(48(A).