NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0865n.06
Filed: October 24, 2005

No. 04-3512

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| QUAN LIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO R. GONZALES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges

JULIA SMITH GIBBONS, Circuit Judge. Quan Lin, a native and citizen of China,

applied for asylum, withholding of removal and protection under the United Nations Convention

Against Torture after his apprehension by immigration officials. The Immigration Judge ("IJ")

denied the claims, finding that: (1) Lin was not credible nor was his testimony sufficiently

corroborated, (2) his claim was time-barred, and (3) even assuming *arguendo* that Lin was

credible, he was not eligible for asylum because of the time he had spent in other countries. The

Board of Immigration Appeals ("BIA") affirmed without opinion, and Lin appealed to this court.

Because substantial evidence supports both the finding that Lin was not credible and the decision

to exclude certain corroborating documents, we affirm.

1

I.

Numerous factual inconsistencies exist in this case.  What is undisputed is that Quan Lin, a citizen of the People's Republic of China, left his home country and traveled for an extended period of time (approximately fourteen months) through Hong Kong, Vietnam, several unknown Middle Eastern countries and Canada, before illegally entering the United States.  The exact dates of his departure from China and arrival into the United States are unclear, but he arrived in the United States sometime between November 1999 and October 2001.  Lin was apprehended by immigration officials in Syracuse, New York on October 12, 2001, and was served with a Notice to Appear before an Immigration Judge.  The Immigration and Naturalization Service ("INS") commenced removal proceedings against Lin, alleging that he was remaining in the country illegally in violation of § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i).  Lin conceded removability at a hearing before the IJ, but filed an application seeking asylum and withholding of removal under 8 U.S.C. § 1231(b)(3) and the United Nations Convention Against Torture, *see* 8 C.F.R. § 208.16.

Lin claims he left China for the United States because of persecution his family faces as a result of China's family planning practices.  Petitioner, however, has not maintained a consistent story in support of this claim.

According to his application for asylum, Lin and his wife had one child, a girl, in February 1998.  Following the birth, Lin's wife was ordered to undergo routine female examinations and to have an intrauterine device ("IUD") inserted to prevent future pregnancies.  During one such exam in December 1999, it was discovered that Lin's wife was again pregnant.  The doctor notified the authorities, who ordered the wife to undergo an abortion and the family to pay a fine of 20,000 RMB.  Lin hid his wife at a relative's home so that she would not have to

3

undergo an abortion and paid part of the fine to prevent the government from destroying their home. In March 2000, Lin and his wife decided to seek a new life outside of China. It was decided that he would travel first, due to her pregnancy, and that she would follow. Lin claims that in April 2000, after he left China, his wife was forced to undergo an abortion.[1] In his application, petitioner stated that he entered the United States on May 13, 2001, placing his asylum application within the one-year time frame for seeking asylum.

When Lin was apprehended by immigration officials in October 2001, before he had met with an attorney or applied for asylum, his story was substantially different. Lin told the officials that he had last entered the United States in November of 1999. This would mean he had been in the United States for more than one year, rendering his asylum application time-barred under 8 U.S.C. § 1158(a)(2)(B). While Lin had his passport, which verified his departure date from China, at the time of his detainment, he lost it at some point prior to the hearing. Perhaps more importantly, in October 2001 Lin told immigration officials that he had a wife but no children, which would be inconsistent with his rationale for seeking asylum. Lin, who does not speak or write English, submitted his answers through a co-worker who served as his regular interpreter.

---

[1] The IJ took notice of the Department of State's Profile of Asylum Claims and Country Conditions for China, which states that while there have been credible claims of forced family planning in the province petitioner lived, "sterilization or use of IUD appears to be urged only for families who have already had two children or perhaps three (if the first two are girls) . . . ." United States Dept. of State, China: Profile of Asylum Claims and Country Conditions (April 14, 1998), at 25. In addition, the report notes that ninety percent of *all* asylum claims come from this province in China and that common elements include "that houses were damaged by angry birth control officials"; "that a wife had to leave her home area to avoid her pregnancy being discovered by officials"; and "that zealous birth control officials tried to impose fines that were allegedly so high that the applicant and his family were unable to pay." *Id.* at 32.

The petitioner's story changed again during his testimony at the deportation hearing when he testified that his mother was taken and held hostage as a penalty for resisting the family planning policy. Upon questioning from the IJ, Lin confirmed that they actually took his mother hostage and did not just threaten to do so. When asked during cross-examination why his application made no mention of this incident, Lin stated that he signed the application without knowing its contents because he trusted his attorney. This contradicted his testimony earlier in the hearing, where Lin swore that he had reviewed the application line-by-line with his attorney, using a competent interpreter, and found no errors.

Lin was the sole witness at the immigration hearing. In an attempt to corroborate his testimony, Lin proffered three sets of documents on three separate occasions. The first set was filed with his application for asylum and purported to be identification documents for Lin and his wife; birth certificates for Lin, his wife and his daughter; Lin's marriage certificate; Lin's household booklet; Lin's marriage certificate; a receipt for a birth planning violation fine; and a family photograph. The set contains original documents in Chinese, along with English translations. Petitioner testified that the documents were hand-delivered to him in New York by a relative who hand-carried them from China, but Lin did not produce the testimony, an affidavit, or even an unsworn statement of this relative to establish the origin and reliability of the documents.

The second set of documents was filed with the Immigration Court two weeks prior to the hearing. This set purports to be translations of the following: an induced abortion record for Lin's wife dated April 16, 2000; a letter dated September 25, 2002, from Lin's parents mirroring Lin's removal hearing testimony; an envelope addressed to Lin from his parents; documentation of Lin's wife's IUD insertions in August 1998 and May 2000; villager identification for Lin's

5

wife; and records of Lin's wife's mandatory examinations from 1996 to 1999. Lin gave no explanation for how he obtained these documents. He never proffered the original Chinese documents to the court and did not retain copies of the original documents. Lin claims to have sent the originals to the INS, but put forth no evidence of doing so other than a Federal Express shipping form with no description of the package being sent. The INS attorney has no record of ever receiving the documents.

The third set of documents, apparently a letter from Lin's parents and a letter from his wife, was not admitted by the IJ, because the deadline for the submision of documents had passed and the translations did not contain the certification required by federal regulations. The IJ noted that there was no legitimate rationale for the documents not being filed earlier, as one was a letter from Lin's parents dated five days *before* a letter from them that had been filed with the court two weeks earlier.

In his ruling, the IJ did not credit these documents because of their failure to conform with regulations regarding certification and translation. The IJ denied the applications for asylum and withholding of removal, finding that Lin's application was untimely and that Lin lacked credibility. Assuming *arguendo* that Lin was credible and the application was timely, the IJ ruled that he would still deny the claims due to the time petitioner spent in other countries (over one year) without applying for asylum. The Board of Immigration Appals affirmed without opinion, and Lin appealed to this court.

II.

6

This court has jurisdiction pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1252(b), to review final orders of removal. As the Board affirmed the IJ's decision without opinion, the decision of the IJ is considered the final agency determination. *See Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) (citing 8 C.F.R. § 1003.1(e)(4)(ii)).

III.

Section 208(a) of the INA empowers the Attorney General, in his discretion, to grant asylum to refugees. 8 U.S.C. § 1158(b). "Refugee" is defined by the INA as an alien who is unable or unwilling to return to his or her home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). The alien bears the burden of establishing eligibility for asylum either due to past persecution or based on a well-founded fear of future persecution. 8 C.F.R. § 208.13(a). If the alien's testimony is found to be credible, it may be sufficient to sustain a finding of persecution without independent corroboration. *Id.* To establish a well-founded fear of persecution, an applicant must establish that:

> (1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear.

*Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998).

In order for an alien to be entitled to a withholding of removal, he must show that there is a clear probability that if he returns to his home country he will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.16(b). Resisting, or being forced to endure, involuntary abortion, sterilization or other population control programs is considered persecution on account of political opinion. 8 U.S.C.

7

§ 1101(a)(42). Similarly, to establish entitlement to withholding of removal under the Convention Against Torture, an applicant must show that "'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (quoting 8. C.F.R. § 208.16(c)(2)). The burden of proof for withholding of removal is more exacting than that for asylum. *Mikhailevitch*, 146 F.3d at 391. Thus, an alien who does not qualify for asylum cannot meet the higher standard for withholding of removal. *Id.*; *Yu v. Ashcroft*, 364 F.3d 700, 703 n.3 (6th Cir. 2004).

### A.

The IJ denied the claim based on a finding that Lin was not credible. Credibility determinations are considered findings of fact and are reviewed under the substantial evidence standard. *Yu*, 364 F.3d at 703. The substantial evidence standard is deferential, and the decision must be upheld if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). This court must affirm the IJ's determination unless "the evidence not only supports a contrary conclusion, but indeed compels it." *Csekinek v. INS*, 391 F.3d 819, 822 (6th Cir. 2004) (internal quotation marks and citation omitted). The credibility determination "must be supported by specific reasons," and "[a]n adverse credibility finding must be based on issues that go to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004).

The evidence in this case strongly supports the IJ's determination that Lin lacks credibility. Lin's story underwent several revisions between the time he was apprehended by immigration officials in October 2001 and his hearing in November 2002. The facts in dispute concern the issues that form the very basis of the petitioner's claim for withholding of removal.

8

The first is the date when Lin last entered the United States. In October 2001, petitioner told immigration officials that he entered the United States in November of 1999. Four months later, in his application for asylum, Lin supplied an exact date for entry of May 13, 2001. In the same October 2001 interview, Lin specified that he had no children, but again, four months later, he not only had a child, but it was the Chinese government's restrictions on birth control after the birth of his first child that resulted in his feared persecution.

In his petition, Lin claims that the information from the October 2001 interview cannot be relied upon because it was not completed with the assistance of a competent interpreter. However, Lin did not raise this issue in front of the IJ, and thus, this court cannot consider it. *See Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) (citing 8 U.S.C. § 1252(b)(4)(A) ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based")). Moreover, with the assistance of the same interpreter,[2] the form completed by immigration officials at the October 2001 meeting lists Lin's correct birthdate, marital status, and his place of residence in China.

The IJ also based his determination on Lin's inconsistency in regards to the alleged abduction of his mother. Lin testified at the hearing that officials held his mother hostage for two or three days – a fact that was not included in his asylum application. Questioning from the IJ clarified that his mother had actually been taken hostage and not just threatened. When asked why this incident was not mentioned in his application for asylum, petitioner stated that he signed the application without knowing what it stated. This contradicted his earlier testimony

---

[2] Lin testified at the hearing that the interpreter he used when speaking with the immigration officials was the manager of the restaurant at which he worked, who served as his usual interpreter.

that he had reviewed the application line-by-line with his attorney, using a competent interpreter, and that nothing needed to be changed.

Finally, the IJ noted that the petitioner's allegations regarding forced family planning contradicted a State Department report detailing family planning practices in China. United States Dept. of State, China: Profile of Asylum Claims and Country Conditions (April 14, 1998). The report states that while there have been credible claims of forced family planning in the province petitioner lived, "sterilization or use of IUD appears to be urged only for families who have already had two children or perhaps three (if the first two are girls) . . . ." *Id.* at 25. Lin's claim of a forced insertion of an IUD after the birth of one female child is thus inconsistent with the known conditions in the province in question.

Added together, it cannot be said that the evidence in this case "compels" the contrary conclusion that Lin's claim for asylum or withholding of removal was credible. In contrast, substantial evidence supports the IJ's finding that Lin was not credible.

B.

The IJ also had substantial justification for his decision to exclude certain documents proffered by Lin to corroborate his claim. In removal proceedings, an alien is entitled to a "reasonable opportunity . . . to present evidence on the alien's own behalf." 8 U.S.C. § 1229a(b)(4)(B). "Evidentiary matters in immigration proceedings, however, are not subject to the Federal Rules of Evidence, and we review evidentiary rulings by IJs only to determine whether such rulings have resulted in a violation of due process." *Singh v. Ashcroft*, 398 F.3d 396, 406-07 (6th Cir. 2005) (internal citations omitted). Although there is no constitutional right to asylum, aliens facing removal are entitled to due process. *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001)).

10

Alleged due process violations in removal hearings are reviewed *de novo*. *Mikhailevitch*, 146 F.3d at 391. A violation occurs when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (quoting *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000)).

The IJ's exclusion of the proffered documents in this case did not in any way violate Lin's due process rights. Several regulations address the admission of documents in immigration proceedings. First, all documents that are to be considered in a proceeding before an IJ must be filed with the Immigration Court. 8 C.F.R. § 1003.31(a). In addition, the IJ may set a time frame for the filing of applications and related documents and responses. *Id.* § 1003.31(c). If any document is not filed within this time frame, the opportunity to file such a document is deemed waived. *Id.* Any foreign language document offered by an applicant must be accompanied by an English language translation and a certification signed by the translator that includes a statement that the translator is competent to translate the document and that the translation is true and accurate to the best of the translator's abilities. *Id.* § 1003.33. Finally, the regulations require that the authenticity of any official document issued by a foreign country must be verified by (1) its official publication or (2) a copy attested to by an officer in the Foreign Service of the United States stationed in the foreign country where the record is kept. *Id.* § 287.6(b).

All of Lin's proffered documents violated one or more of these provisions. Thus, the IJ's decision to exclude these documents was justified and in no way resulted in a proceeding that was "fundamentally unfair" and in violation of due process.

The documents attached to Lin's application for asylum purported to be the Chinese originals, and English translations of, identification documents, birth certificates, a marriage

11

certificate, and a receipt for a birth planning policy violation fine. None of these foreign documents were authenticated as required by 8 C.F.R. § 287.6(b). Moreover, Lin provided no verification for the origin or reliability of these documents, not even the testimony or statement of the New York relative who supposedly brought him the documents.

The second set of documents, filed two weeks prior to the hearing, purported to be English translations of Chinese documents and with one exception, were not accompanied by the Chinese originals as required under 8 C.F.R. § 1003.33. Lin's attorney claimed that the originals of these documents, which purported to include an induced abortion record, a letter from Lin's parents, documentation of IUD inserts and a mandatory female examination record, had been sent to the INS attorney, but there was no record of their being sent or received. As the original documents were not submitted to the court, they could not be considered by the IJ. 8 C.F.R. § 1003.31(a). Further, the English translations did not contain the certification required by 8 C.F.R. § 1003.33; thus, they too could not be considered by the court.

The final set of documents, two letters petitioner attempted to enter into evidence at the hearing, were also properly rejected. The IJ rejected the letters because the deadline for document submission had passed, 8 C.F.R. § 1003.31(c), and the translations were not certified, 8 C.F.R. § 1003.33.

Under the federal regulations governing asylum hearings, the IJ properly rejected the documents proffered by petitioner. The exclusion did not violate Lin's due process rights.

IV.

For the foregoing reasons, we affirm the decision of the Board of Immigration Appeals.